## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CYNTHIA M. WINN, | : | |
| Plaintiff, | : | |
| | | Case No. 3:13cv00054 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.     Introduction

Plaintiff Cynthia M. Winn ("Plaintiff") sought financial assistance from the Social Security Administration by protectively applying for Disability Insurance Benefits ("DIB") in January 2009, alleging disability since March 3, 2008.  (*PageID## 178-85*). She claims disability due to "[b]ack pain, depression, insomnia, muscle spasms, right hip problems, high blood pressure; muscle sprains in both hands, wrists, arms, and shoulders."  (*PageID# 233*).

After various administrative proceedings, Administrative Law Judge ("ALJ") Amelia G. Lombardo denied Plaintiff's application for DIB based on her conclusion that

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

1

Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act. (*PageID##* 67-82). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. § 405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. # 13), the administrative record (Doc. # 6), and the record as a whole.

## II. <u>Background</u>

### A. <u>Plaintiff's Vocational Profile and Testimony</u>

Plaintiff was 53 years old on her alleged disability onset date. She turned 56 years old at the time the ALJ issued her decision, which defined her as a "person of advanced age" for purposes of resolving her DIB claim. *See* 20 C.F.R. § 404.1563(e); *see also PageID##* 69, 228. Plaintiff graduated from high school and completed one year of college. (*PageID##* 87, 238). She has worked as an automobile parts sequencer, auto inventory clerk, store rental clerk, and receptionist. (*PageID##* 81, 234).

Plaintiff testified that she meets with her therapist every other week and her psychiatrist every two months. (*PageID#* 106). She no longer consumes alcohol, and credits this to attending church. (*Id.*). Plaintiff described her mental problems, including being diagnosed as a manic depressant in her 20's and experiencing erratic mood swings and depression. (*PageID#* 107). She stated she has good days and bad days. (*Id.*). On

2

bad days, she does not feel like getting out of bed or taking a bath. (*Id.*). She noted one time where she did not get out of bed for seven days. (*Id.*).

Plaintiff testified that it takes her 2 ½ hours to get ready for any activity. (*PageID#* 108). She noted that her typical day involves avoiding contact with the general public. (*PageID##* 108-09). She is in a singles group at her church and formerly participated in the church choir. (*PageID#* 109). Plaintiff stopped singing in the church choir because she was falling so much. (*Id.*).

On cross examination, Plaintiff explained that when she gets depressed, she isolates herself from people and does not eat or sleep. (*PageID#* 112). She also testified that she hears voices saying negative statements. (*PageID#* 113). She does not like to be around other people and tries to avoid contact with people in public places, such as while at the grocery store. (*Id.*).

### B. Vocational Expert Testimony

A Vocational Expert (VE) also testified at the administrative hearing. (*PageID##* 114-37). The VE identified four jobs that Plaintiff performed in the relevant time period, such as a parts sequencer, an automobile inventory clerk, and a rental clerk (all classified as light, semi-skilled work). Plaintiff also worked as a receptionist (at the sedentary, semi-skilled level). (*PageID#* 114).

The VE also testified that an individual of Plaintiff's age, education, and work experience, who could only do unskilled work, could not do those jobs. The VE acknowledged, however, that an individual with no particular mental health limitations,

who could do either light or sedentary work, could do those jobs.  (*Id.*).  If the individual could only occasionally stoop, crouch, kneel, and crawl, the light jobs would be ruled out but the sedentary job of receptionist still could be performed.  (*PageID#* 114-15).   The VE further testified that his testimony is consistent with the *Dictionary of Occupational Titles* ("DOT").  (*PageID#* 115.)

The VE testified that a hypothetical individual with psychological limitations from dysthymic disorder and anxiety disorder – that would limit that person to low stress work – would be unable to perform Plaintiff's past relevant work.  (*PageID#* 116).

## C.    <u>Relevant Medical Treatment and Opinions</u>[2]

Plaintiff began mental health treatment at Daymont Behavioral Health Center ("Daymont") on July 8, 2009.  (*PageID##* 553-70).  At the time of her initial assessment, Plaintiff presented with a history of depression, bereavement, and sleep problems.  (*PageID#* 559). Plaintiff was referred by Eastway Behavioral Healthcare ("Eastway") for a diagnostic assessment.  She went to Eastway for three sessions "a long time ago."  (*Id.*).  She reported she had been inconsistent with mental health treatment.  She also reported a family history of depression on both sides, with multiple family members having committed suicide.  Plaintiff's diagnoses were identified as alcohol abuse, depressive disorder, NOS, and she was assigned a Global Assessment of Functioning  ("GAF") score

---

[2]Plaintiff does not challenge the ALJ's evaluation of the medical evidence as to her exertional impairments.  Accordingly, the Court will focus its review of the medical evidence on Plaintiff's mental impairments.

of 55.[3]  (*PageID#* 559).  Plaintiff was referred for counseling/psychotherapy and medical-somatic services.  (*PageID#* 560).

Treatment notes from Daymont show that as of November 30, 2009, Plaintiff was "making good progress," but she "continues to present with depression…" (*PageID#* 665).  On December 22, 2009, it was noted that Plaintiff "continues to present with depression."  (*PageID#* 662).  On May 11, 2010, it was noted "[c]lient continues to present with depression, as evidenced by not bathing in almost 2 weeks."  (*PageID#* 641).

Plaintiff relies on the opinion of her treating psychiatrist, Amparo Wee, M.D., who began treating her on April 8, 2010.  (*PageID##* 646-47).  On August 19, 2010, Dr. Wee answered interrogatories and completed a form concerning Plaintiff's mental work abilities.  (*PageID##* 698-710).  Dr. Wee confirmed that Plaintiff has a long history of depression with suicidal ideation.  (*PageID#* 699).  Her depression worsened when the company she worked for went out of business.  Dr. Wee acknowledged that the combined effects of her physical and mental impairments have resulted in Plaintiff suffering a greater degree of functional limitations than the physical impairments alone.  (*Id.*).  Thus, the total functional restriction resulting from Plaintiff's mental and physical impairments,

---

[3]GAF," Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness.  It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation.  *See Martin v. Comm'r of Soc. Sec.*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34.  Individuals with scores of 51-60 are classified as having "moderate symptoms ... or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  (*Id.*).

in combination, were greater than the sum of their parts.  (*Id.*).  Dr. Wee opined that it was not reasonably probable that Plaintiff has been capable of functioning at a level high enough to respond appropriately to supervision, co-workers, and customary work pressures on a regular, sustained basis, in a routine work setting, in a competitive job placement.  (*PageID#* 701).  Dr. Wee indicated that Plaintiff experiences paranoid ideation that interferes with her ability to interact with other persons, and has physical disabilities that prevent her from working.  (*Id.*).

Dr. Wee also found that Plaintiff lacked an ability to do the following: withstand the pressure of meeting normal standards of work productivity and work without significant risk of physical or psychological decompensation or worsening of her physical and mental impairments; sustain attention and concentration on her work to meet normal standards of work productivity and work accuracy; understand, remember and carry out simple work instructions without requiring very close supervision; behave in an emotionally stable manner; maintain concentration and attention for extended periods; complete a normal work day and work week without interruption from psychologically and/or physically based symptoms and perform at a consistent pace without unreasonable numbers and length of rest periods; respond appropriately to changes in routine work settings; get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes; sustain ordinary routine without special supervision; work in coordination with, or in proximity to, others without being unduly distracted by them; and accept instructions and respond appropriately to criticisms from supervisors.  (*PageID##*

6

702-06).  Dr. Wee concluded that Plaintiff also had marked limitations in her activities of

daily living, marked difficulties in maintaining social functioning, and marked difficulties

in maintaining concentration, persistence or pace.  (*PageID##* 706-07).  Dr. Wee also

opined that Plaintiff's ability to understand, remember, and carry out simple job

instructions is good and that her ability to understand, remember, and carry out detailed,

but not complex, job instructions is fair.  (*PageID#* 709).

 Although records from Daymont and Dr. Wee indicate fluctuations in Plaintiff's

mental health, she has been observed to be suffering from the following symptoms:

irritability, anxiety, loss of interest in activities, sleep difficulty, mood swings, and

episodic suicidal thoughts. (*PageID##* 557, 574, 636-89, 755-822).  Plaintiff takes

Depakote, Lexapro, and Xanax, as prescribed by Dr. Wee.  (*PageID##* 691-92, 823-24).

 To support Dr. Wee's opinion, Plaintiff also relies on the opinion of Mary Ann

Jones, Ph. D., who evaluated her on behalf of the state agency on March 5, 2009.

(*PageID##* 471-77).  Dr. Jones described Plaintiff's presenting demeanor as resigned and

her affect was sad.  (*PageID#* 474).  Plaintiff described her emotional state as depressed

and admitted to experiencing suicidal ideation, but denies having a history of suicidal

gestures or being actively suicidal.  (*Id.*).  She noted that she had her "anger under control

now."  (*Id.*).  She acknowledged feeling depressed, "sometimes." (*Id.*).  Plaintiff

maintained limited eye contact, but otherwise evidenced no other overt signs of nervous

tension.  (*Id.*).  She acknowledged panic symptoms, "[l]ike when I have to go outside and

be with people."  (*Id.*).  She noted she was able to go to the store, but only went late at

night "when there is no one there." (*Id.*).  She admitted to becoming easily upset and anxious whenever her routine was interrupted. (*Id.*).  Dr. Jones found Plaintiff was preoccupied with her symptomatology and evidenced a degree of confusion. (*Id.*). Plaintiff cited both recent and remote memory loss and described problems with concentration. (*Id.*).  She cannot sustain concentration through a movie. (*Id.*).  Mental calculative abilities fell within the borderline range. (*Id.*).  Dr. Jones diagnosed Plaintiff with psychological factors affecting her physical condition, dysthymic disorder, and a generalized anxiety disorder. (*PageID#* 476).  Dr. Jones determined that Plaintiff was mildly impaired in her ability to maintain concentration, persistence and pace to perform simple repetitive tasks.  He also determined she was moderately impaired in her ability to understand, remember, and follow instructions, and to withstand the stress and pressure associated with day-to-day work activity. (*PageID#* 477).  Dr. Jones also determined that Plaintiff was moderately limited in her ability to relate to others, including fellow workers and supervisors, noting that she "would be unable to relate sufficiently to co-workers and supervisors on any sustained basis for two or more hours at a time, even to perform simple repetitive tasks." (*Id.*).

State agency psychologist, Kristen Haskins, Psy.D. reviewed the record on March 24, 2009. (*PageID##* 499-516).  Dr. Haskins determined that Plaintiff had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of  decompensation. (*PageID#* 513).

8

Dr. Haskins also completed a Mental Residual Functional Capacity Assessment, in which she found that Plaintiff was markedly limited in her ability to interact appropriately with the general public. (*PageID#* 500). She found Plaintiff had moderate limitations in her abilities to do the following: understand and remember detailed instructions; carry out detailed instruction; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and respond appropriately to changes in the work setting. (*PageID##* 499-500).

Dr. Haskins concluded that Plaintiff would be able to perform simple repetitive tasks and follow 1 to 2 step instructions in a static and non-public environment, and without strict production or time demands. Plaintiff would be able to interact with others minimally and superficially. (*PageID#* 501). On September 15, 2009, another state agency psychologist, Alice Chambly, Psy.D., reviewed the record and affirmed Dr. Haskins' opinion. (*PageID##* 581-82).

**III.    Administrative Review**

**A.    "Disability" Defined**

The Social Security Administration provides DIB to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D). The term "disability" – as defined by the

Social Security Act – has specialized meaning of limited scope.  It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity.  *See* 42 U.S.C. § 423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.  A DIB applicant bears the ultimate burden of establishing that he or she is under a "disability."  *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

The term "disability" – as defined by the Social Security Act – carries a specialized meaning of limited scope.  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are "medically determinable" and severe enough to prevent the claimant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

## B.    Social Security Regulations

Administrative regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence.  *See PageID##* 68-69; *see also* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review answers five questions:

1.    Has the claimant engaged in substantial gainful activity?

2.    Does the claimant suffer from one or more severe impairments?

10

3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4.  Considering the claimant's residual functional capacity, can he perform his past relevant work?

5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can he or she perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

## C.  ALJ Lombardo's Decision

Plaintiff last met the insured status requirements of the Social Security Act through June 30, 2013.  (*PageID#* 70).

At Step 2 of the sequential evaluation, the ALJ concluded that Plaintiff has the severe impairments of degenerative joint disease affecting the lumbar spine, hips, and knees; residual effects of left ankle fracture and corrective surgery; and obesity.  (*Id.*). The ALJ also determined that Plaintiff has not met the burden of proving the existence of a mental impairment.  (*PageID#* 77).

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the Listings.  (*PageID#* 78).

At Step 4, the ALJ evaluated Plaintiff's RFC and found that she could perform a full range of sedentary work.[4]  (*Id.*).

_____

[4]The Regulations define sedentary work as involving the ability to lift " no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools..." 20 C.F.R. §404.1567(a).

The ALJ concluded at Step 4 that Plaintiff was able to perform her past relevant work as a receptionist.  (*PageID#* 81).  The ALJ found, based on the testimony of the VE, that the receptionist job would not involve the performance of any duties or activities that would be precluded by the functional limitations associated with Plaintiff's impairments. (*Id.*).

The ALJ's findings throughout her sequential evaluation led her to ultimately conclude that Plaintiff was not under a disability and was therefore not eligible for DIB. (*PageID#* 82).

## IV.  __Judicial Review__

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of

12

"more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.    Discussion

### A.    The Parties' Contentions

Plaintiff contends the ALJ erred in finding that she did not have a severe mental impairment that would limit her ability to perform work activity. *See* Doc. #7 at *PageID#* 850. Specifically, according to Plaintiff, the ALJ erred by not adhering to the treating physician rule in assessing the medical opinion of her treating source, Dr. Wee. (*Id.* at *PageID##* 851-55). Plaintiff also argues the ALJ failed to consider her mental health impairments in determining her RFC. (*Id.* at *PageID#* 855).

Conversely, the Commissioner contends the ALJ's decision to deny Plaintiff benefits is supported by substantial evidence. More specifically, the Commissioner

asserts that the ALJ did not err at Step 2 of the sequential evaluation in determining that Plaintiff does not suffer from a severe mental impairment. (Doc. #11 at *PageID#* 870). The Commissioner further contends the ALJ properly rejected the opinion of Dr. Wee. (*Id.* at *PageID##* 872-77).

**B.** **Dr. Wee's Opinion**

Plaintiff contends the ALJ erred by finding she is not disabled by reason of her mental impairments. Plaintiff specifically contends the ALJ erroneously rejected the opinion of her treating psychiatrist, Dr. Wee. Plaintiff contends that Dr. Wee's opinion was entitled to substantial deference under the treating physician rule.

The ALJ recognized that Dr. Wee was Plaintiff's treating psychiatrist and that in Dr. Wee's opinion, Plaintiff could not perform most mental-related activities on a regular sustained basis. (*PageID##* 702-06). When rejecting this opinion, however, the ALJ stated the following:

> ...the conclusion of treating psychiatrist Dr. Wee that the claimant is unable to work cannot be given controlling, or even deferential, weight. Such conclusion is neither well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence in the case record. As stated previously, Dr. Wee commented on physical limitations experienced by the claimant. Dr. Wee's comments pertaining to the claimant's physical condition and reported limitations have been considered but are given little weight when evaluated under the guidelines of 20 CFR 404.1527 because he did not treat the claimant for physical impairment. Also, some of his comments (e. g., "she reports she has carpal tunnel syndrome on both wrists") are based on the claimant's self report rather than on objective medical evidence and clinical findings.

> Dr. Wee's pessimistic conclusions concerning the claimant's mental functioning capabilities are likewise not borne out by mental health

14

> treatment records. For example, at about the same time Dr. Wee completed
> the interrogatories for claimant's counsel, a psychiatric treatment record
> indicates that the claimant was "doing well" and that she did not have any
> problems. Another report states that the claimant had an appointment to
> complete paperwork for her disability application and in the same entry it
> notes that she was "doing well on her med[ication]s."

(*PageID#* 75) (citation to record omitted).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875–76 (6th Cir. 2007); *see also Cole v. Astrue*, 661 F.3d 931, 937–38 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

Generally, "the opinions of treating physicians are entitled to controlling weight." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997)). However, '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley*, 582 F.3d at 406, *quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). A treating physician's opinion can only be discounted if: (1) it is not supported by medically acceptable clinical and laboratory diagnostic techniques, (2) it is inconsistent

15

with substantial evidence in the record, (3) it does not identify the evidence supporting its finding, and (4) if it fares poorly when applying the factors listed in 20 C.F.R. § 404.1527(d)(2), which include, *inter alia*, the length and frequency of examinations, the amount of evidence used to support an opinion, the specialization of the physician, and consistency with the record. *Wilson*, 378 F.3d at 546.

The ALJ erred in this case by overlooking or ignoring several aspects of Dr. Wee's assessment. First, Dr. Wee based her opinions on observable clinical signs and symptoms as required by both the Commissioner's Regulations and case law in this Circuit. The applicable Regulation states in part:

> Symptoms are your own description of your physical or mental impairment(s). Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, as described by an appropriate medical source. Symptoms and signs generally cluster together to constitute recognizable mental disorders described in the listings. The symptoms and signs may be intermittent or continuous depending on the nature of the disorder.

§ 12.00B, Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. The ALJ fails to mention § 12.00B in her decision, however, and the substance of her decision fails to incorporate the required legal standards set forth by §12.00B (particularly when analyzing whether Dr. Wee's opinions were based on psychiatric symptoms or signs such as those listed in §12.00B). Dr. Wee's narrative statements revealed that Plaintiff was, in fact, suffering from significant symptoms of depression, including suicidal ideation, paranoia, difficulty focusing, and poor concentration. By emphasizing only the appointments when

16

Plaintiff reported she was "doing well," the ALJ not only ignored or overlooked evidence

supporting Dr. Wee's opinions, but seemed to only search through Dr. Wee's reports for

reasons to discount the opinions.  (*PageID*# 75).  This is contrary to the ALJ's duty to

examine the entire record and to also consider evidence favorable to Plaintiff.

Perhaps more significantly, the ALJ erred by requiring objective medical evidence

to support Dr. Wee's opinions.  The United States Court of Appeals has rejected the need

for objective medical evidence to support a claimed mental impairment as follows:

> [A] psychiatric impairment is not as readily amenable to substantiation by
> objective laboratory testing as a medical impairment ... consequently, the
> diagnostic techniques employed in the field of psychiatry may be somewhat
> less tangible than those in the field of medicine.... In general, mental
> disorders cannot be ascertained and verified as are most physical illnesses,
> for the mind cannot be probed by mechanical devices ... in order to obtain
> objective clinical manifestations of mental illness.... [W]hen mental illness
> is the basis of a disability claim, clinical and laboratory data may consist of
> the diagnosis and observations of professionals trained in the field of
> psychopathology.  The report of a psychiatrist should not be rejected simply
> because of the relative imprecision of the psychiatric methodology or the
> absence of substantial documentation, unless there are other reasons to
> question the diagnostic techniques.

*Blankenship v. Brown*, 874 F.2d 1116, 1121 (6th Cir. 1989)(quoting *Poulin v. Bowen*, 817

F.2d 865, 873-74 (D.C. Cir. 1987)(other citation omitted)).  The Sixth Circuit further

recognized that psychiatrists often diagnose mental disorders after only one interview.

*Blankenship*, 874 F.2d at 1121.  Most significantly, while ALJs are free under

*Blankenship* to reject a psychiatrist's opinion, there must be some valid reason to do so,

such as a reason to question the diagnostic techniques, *see id.*, or the absence of the type

of signs and symptoms set forth in §12.00B.  In the instant case, because the ALJ did not

17

evaluate Dr. Wee's opinion under §12.00B or consistent with *Blankenship*, the ALJ did not apply the proper legal standards.  In addition, the ALJ erred by overlooking information in Dr. Wee's narrative responses that supported such opinions.

The ALJ also did not address Dr. Wee's opinion that Plaintiff's symptoms of depression impeded her ability to cope with her physical pain.  Dr. Wee explained repeatedly that Plaintiff's pain would likely lead her to decompensate under work stress and deprive her of many mental work abilities.  (*PageID##* 699-701, 704, 710).  Dr. Wee's report explains this in some detail, yet it appears the ALJ either overlooked or ignored such findings when rejecting this treating psychiatrist's opinions.  *See id.; see PageID##* 75-76.  By failing to consider this feature of Dr. Wee's report, the ALJ failed to recognize the mandatory language of the "supportability" factor, which promises, "[t]he better explanation a source provides for an opinion, the more weight we will give that opinion...." 20 C.F.R. § 404.1527(d)(3).  This was an acute omission on the ALJ's part because Dr. Wee's opinion was the only medical source opinion in the record addressing the combined impact Plaintiff's physical pain and depression had on her work abilities.  *See* 42 U.S.C. § 423(d)(2)(B); *see also* 20 C.F.R. § 404.1523.

Accordingly, Plaintiff's First Statement of Error is well taken.

### C.    Step 2 and Residual Functional Capacity

Plaintiff next argues that the ALJ erred by failing to find that she has a severe mental impairment.

The step-two burden of establishing a "severe" impairment has been characterized in this circuit as *"de minimis*." *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Murphy v. Sec'y of Health & Human Servs.,* 801 F.2d 182, 185 (6th Cir. 1986). The Commissioner states that an impairment is "not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities, [such as] walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . [u]nderstanding, carrying out, and remembering simple instructions, [and] [u]se of judgment." 20 C.F.R. § 404.1521. An impairment qualifies as "non-severe"only if it "would not affect the claimant's ability to work," regardless of the claimant's age, education, or prior work experience. *Salmi v. Sec'y of Health & Human Servs.,* 774 F.2d 685, 691-92 (6th Cir. 1985). The prevailing view, then, is that only slight abnormalities that minimally affect a claimant's ability to work can be considered non-severe. *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988); *Farris v. Sec'y of Health & Human Servs.,* 773 F.2d 85, 90 (6th Cir. 1985).

Generally, an ALJ does not commit error requiring automatic reversal of the Commissioner's decision when the ALJ finds a non-severe impairment and determines that a claimant has at least one other severe impairment and proceeds with the remaining steps in the disability evaluation. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). That is because the ALJ considers all impairments, including non-severe impairments, in determining residual functional capacity to perform work activities. (*Id.*).

19

As noted above, the mental health providers at Daymont Behavioral Health Center, Dr. Wee, and Dr. Jones diagnosed Plaintiff with mental impairments which affected her ability to perform work-related activities.  In addition, the reviewing mental health experts – Drs. Haskins and Chambly – reported that Plaintiff had a mental impairment that affected her ability to perform work-related activities.  They also reported that she is moderately limited in some areas of functioning.  (*PageID##* 499-500).  There is no suggestion in the record that Plaintiff does not have a severe mental impairment.

Despite the significant amount of evidence indicating Plaintiff has a severe mental impairment, the ALJ failed to recognize the presence of such.  Although she continued through the sequential evaluation process to Step 4 before concluding that Plaintiff is not disabled, she failed to properly consider any mental limitations in Plaintiff's RFC.  Rather, the ALJ appears only to have considered Plaintiff's alleged exertional limitations.  *See PageID#* 78-80, Finding 5.

Due to the ALJ's failure to properly consider Plaintiff's mental impairments in her RFC, the Court is unable to conclude the error falls within the parameters of *Maziarz* and does not require reversal.  Accordingly, the ALJ's decision that Plaintiff is not disabled is not supported by substantial evidence and should be reversed.

## VI.    Remand is Warranted

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42

U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak. *See id.* However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g) due to the problems previously discussed.

On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulation and Rulings and by case law, and to evaluate Plaintiff's disability claim under the required five-Step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for DIB should be granted.

## IT IS THEREFORE RECOMMENDED THAT:

1. The ALJ's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Cynthia M. Winn was under a "disability" within the meaning of the Social Security Act;

21

3.      This matter be **REMANDED** to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and,

4.      The case be **TERMINATED** on the docket of this Court.

January 22, 2014

                                      _____s/Sharon L. Ovington_____
                                           Sharon L. Ovington
                                 Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).